Ehlen v. O'Donnell.

$727.50

$1,200

102   141
a205s  38

## Joseph C. Ehlen v. Patrick H. O'Donnell, Adm'r, etc.

1. MASTER AND SERVANT — *Ownership of Appliances, When Immaterial.*—Where an employer of painters directed them to take a scaffold in his possession and proceed with their work upon a tall building, which they did, it is immaterial whether such employer had or did not have legal title to such scaffold.

2. SAME—*Right of a Servant to Assume that Appliances are Reasonably Safe.*—Where an employe, engaged in painting the outside of a tall building, is directed by his employer to take a certain scaffold and proceed with his work, he has the right to assume that the scaffold is reasonably safe for him to use in such work.

3. CONTRIBUTORY NEGLIGENCE—*A Question of Fact for the Jury.*— Whether an employe, injured in falling from a scaffold while engaged in painting the outside of a building, was guilty of contributory negligence, is a question for the determination of the jury.

Trespass on the Case.—Death from negligence. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed May 22, 1902.

Statement.—This is an appeal from a judgment recovered by appellee against appellant for the sum of $2,500 in

an action for alleged negligence which caused the death of appellee's intestate, John P. Schanne. Ehlen is a contracting painter and had a contract to paint a building known as 646 Wells street, in the city of Chicago. The building was three stories high, a store below and two flats above, and fronted west. Appellant's residence was about 250 feet distant from the building. June 9, 1898, appellant had in his basement two scaffolds twenty-four feet in length. On that day he told Schanne, appellee's intestate, and Julius A. Nelson, who were then in his employ as painters, to go to his basement, get a scaffold and go ahead with the work of painting the building. Nelson and Schanne went into the basement, accordingly, and, with one Heide, took out a twenty-four feet scaffold and carried it over to the building which was to be painted. The front of the building being some six or seven feet wider than the length of the scaffold, the men procured a plank ten or twelve feet long, ten inches wide and about one and one-half inch in thickness, and tied it with a rope onto the scaffold, tying it about three or four feet from the end of the scaffold. This seems to have been done to avoid the necessity of moving the scaffold in painting the front of the building. The scaffold was then raised to the roof by ropes attached to planks fastened above. Nelson and Schanne went to work on the scaffold about two o'clock June 9, 1898, and worked until five o'clock P. M. of that day. They put one coat of paint on the front of the building June 9th, the scaffold descending, as the work progressed, to the bottom of the wall. From the 9th to the 14th of June it rained and no painting was done in that interval, and the scaffold remained where the men left it on quitting work June 9th. June 14, 1898, appellant directed Schanne and Kallbom, another of his employes, to go and finish the painting. In obedience to such direction, the men got on the scaffold, which was raised so as to paint from the roof down, about eight o'clock A. M. Subsequently, at what precise time does not appear from the evidence, when the scaffold was about thirty or thirty-five feet above the ground, it gave way and both Schanne and Nel-

son fell to the ground, one on top of the other.    Schanne's injuries caused his death the same day.    He was thirty-six years old at the time of his death and left a widow and five children, the oldest being twelve years of age.    The scaffold seems to have been a ladder with boards laid lengthwise across its rungs.    Charles Richter, a painter employed by appellant, testified :

" It is a long ladder, with boards across the top to stand on, two stringers on the side made of Georgia pine, about two by four—not quite as big as two by four—and the boards on top are about half an inch thick, five inches wide and about twenty-four feet long."

He also testified that the platform between the stringers was Georgia pine and the rungs of the ladder were ash.  This witness testified that, after the accident, he took the scaffold down and examined it, and found a crack in one stringer and an iron band underneath to brace the crack, and it seemed that the nuts gave way and broke through where the crack was;  also, that after the accident both ends of the scaffold hung down above where the men lay.  He testified that the iron band was one-eighth inch thick, seven-eighths inch wide and about two and one-half feet long, and was on the stringer farthest from the building.

Joseph T. Miller, a policeman, who was at the premises just after the accident, and while the men were still lying on the sidewalk, testified that he saw the scaffold after it was lowered; that about nine feet from the north end of the ladder the inside stringer was split about eighteen inches or more, and the other or outside stringer, which had an iron band on the bottom of it, was broken in two; that both stringers broke; that there was a crack in the outside stringer, and the iron plate was over the crack.

Appellant, himself, testified that he saw the scaffold after the accident and found the ladder broken about four or five feet from one end; thàt the iron band was four feet in'length and three-eighths of an inch thick, and it commenced between two and three feet from the end of the staging and was held in place by four bolts on each side of the crack in the stringer, and that the break in that stringer was an up and

down one, and in the other stringer it was the long way and a fresh break.

Frank Straub, a painter, testified that he examined the scaffold right after it came down, in front of the building, and that on the outside stringer there was an old crack where the band was underneath, and the bolts were in a rusty condition and some of them had pulled out.

Charles O. Thienger testified that he saw the scaffold after the accident; that the side where the iron band was, was broken in two; that the break was old, and the iron band had been put there to protect it; that both of the rails were bad and the bolts pulled through the wood. Witness further testified that after the ladder was broken, the wood appeared to be a dry rot.

Emil Arnold testified that both stringers were broken; that the inside one was broken lengthwise, from the top down; that the crack where the iron band was was old, and that the wood was soft; also that the nuts which held the bolts were broken off. Other witnesses testified to the same effect, and no evidence was introduced by appellant tending to prove that the scaffold was fit for the purpose for which it was used. Evidence relied on by appellant will be considered in connection with the contentions of his counsel.

ROGERS & MAHONEY and CHILTON P. WILSON, attorneys for appellant.

ALTGELD, DARROW & THOMPSON, attorneys for appellee.

Mr. JUSTICE ADAMS delivered the opinion of the court.

The contentions of appellant's counsel are, substantially, that the evidence does not support the declaration; that the scaffold is not shown to have been defective; that it was lengthened by the deceased, without authority, thereby weakening it; that the deceased knew of the defect and appellant did not and was not bound to repair it, and that the deceased was guilty and appellant not guilty of negligence.

In both counts of the declaration it is averred that appellant was possessed of and owned the scaffold, and appellant's

Ehlen v. O'Donnell.

contention is, that the evidence shows that appellant did not own it, and therefore the declaration is not supported by the evidence. The theory of counsel is that to entitle appellee to recover, he was bound to prove not only that appellant was in possession of the scaffold, but that he in fact owned it. This theory is erroneous. If the scaffold was in appellant's possession, as the evidence proves it was, and he furnished it to appellee's intestate to work on, which the evidence shows he did, it is immaterial whether he had, or not, legal title to it. McBeath v. Rawle, 93 Ill. App. 212.

A plaintiff is not necessarily bound to prove all the averments of his declaration. If he proves substantially enough of the averred facts to warrant a recovery, it is sufficient. The evidence on which the objection is based is substantially as follows: The appellant testified that the scaffold was not his; that he did not know where it came from; that he had in his basement only two scaffolds that he knew of, one a twenty-four and the other a twenty-two feet scaffold, and that prior to the accident the twenty-two feet scaffold had disappeared (the inference being that in some way it had been exchanged for the twenty-four feet scaffold in question), and that he did not see the scaffold in question till after the accident. This last testimony is evidently a mistake on appellant's part, because he testified on cross-examination, that June 9th he saw the scaffold taken out of his basement. That the scaffold had been in his possession and was in the basement of the house in which he lived prior to the accident, and had been used by his employes on two different jobs of painting, one of them more than two weeks prior to the accident, is shown by the evidence. It also conclusively appears from the evidence that the scaffold was furnished by appellant. Nelson, who, with the deceased, worked on the scaffold June 9th, testified that appellant told him and the deceased to get scaffolding out of the basement. Appellant testified that he told the men to get their materials and go to work; to get the scaffolding for the job; that he did not say where the

scaffolding was; that the men, Nelson and Schanne, knew; that Nelson had worked for him twelve years and Schanne from early in the spring of that year. This was equivalent to telling the men to go to the basement and take any scaffold there, and they, on receiving such directions, had the right to assume, and apparently did assume, that the scaffolds in the basement were reasonably safe. The law that the master is bound to exercise reasonable care to furnish his servants with reasonably safe appliances, is too well established and too familiar to require citation of authorities. What is reasonable care in the particular case depends on the circumstances of the case, and it would seem that very great care should be required in the furnishing of scaffolds for men to work on, suspended at a great height from the ground.

In the case of carriers of passengers on passenger trains extraordinary care is required; and it would seem that like care should be required in furnishing scaffolds to be used as was the one in question. It was the duty of appellant, before directing the men to take a scaffold from his basement, to know what scaffolds were there, and to exercise reasonable care to ascertain that they were reasonably safe for the intended use. This duty he could have readily and conveniently performed, as the scaffolds were in the basement of the house in which he resided.

Appellant, after testifying that he had caused an inspection of scaffolds in his basement February 24, 1897, nearly one year and four months before the accident, and none after that up to the time of the accident, testified :

" I do not know how long I had this staging in question in my possession. I am sure it was not in my possession when I had this inspection. *If we had seen that iron band, we would have thought it needed repairing.*"

Heide, witness for appellant, testified that ten weeks before the accident he saw the scaffold in appellant's basement. Can it be doubted that if he had carefully inspected the scaffold he would have seen the iron band? But it is contended that the deceased was guilty of negligence which precludes a recovery, in lengthening the scaffold, in not

testing it, and in not heeding the warning of Heide. Also that he had equal opportunity with appellant to know its condition. The stringers of the ladder or scaffold broke. The plank by means of which the scaffold was lengthened did not break, nor does it appear from the evidence that it was not securely bound to the twenty-four feet scaffold. It certainly can not be said, as matter of law, that the deceased was guilty of negligence in lengthening the scaffold. This was a question for the jury. Richard Heide helped Nelson and Schanne to take the scaffold from the basement June 9th, and testified that he told the men that he would not trust that stage very much; that this was all he said, and that no one said anything back; that when he said this he was at one end of the scaffold, Schanne at the other end and Nelson in the middle. Nelson testified that he did not remember having ever heard Heide make such remark as the latter testified to. It was clearly a question for the jury whether the remark was made, or whether, if made, the deceased, who was further from Heide than Nelson, heard it. The deceased had the right to assume that appellant had done his duty; that he had exercised reasonable care to see that the scaffolds in his basement were reasonably safe and in proper condition. C. & A. R. R. Co. v. Maroney, 170 Ill. 520.

It was not incumbent on the deceased, when ordered to take a scaffold from the basement and to go ahead with the work, to test or particularly inspect the scaffold, he not having actual knowledge of any defect in it. (Ib. 524.) There is evidence to the effect that the top of the scaffold was covered with paint, and that the defect in it could not be discovered except by careful inspection. That the scaffold was defective is proved by the evidence, and that its condition could have been discovered by reasonably careful inspection, is a conclusion warranted by the evidence.

We find no error warranting a reversal in the giving or refusal of instructions. Instructions, the refusal of which is complained of, are substantially included in instructions given.

The judgment will be affirmed.